UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TIM WILKERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 1:09-cv-1314-WTL-MJD |
| | ) |
| J. BRUCE WRIGHT, | ) |
| | ) |
| Defendant. | ) |

**ENTRY ON MOTION FOR SUMMARY JUDGMENT**

Before the Court is the Defendant's Motion for Summary Judgment (Docket No. 52). This motion is fully briefed, and the Court, being duly advised, now **GRANTS** the Defendant's motion for the reasons set forth below.

**I. SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *see also* FED. R. CIV. P. 56(e)(2). A genuine issue of material fact exists whenever "there is

sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Methodist Med. Ctr. of Ill. v. Am. Med. Sec., Inc.*, 38 F.3d 316, 319 (7th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). The non-moving party bears the burden of demonstrating that such a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Wolf v. Northwestern Ind. Symphony Soc'y*, 250 F.3d 1136, 1141 (7th Cir. 2001), *cert. denied*, 534 U.S. 1028 (2001). "[T]he court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

In evaluating a motion for summary judgment, although the court draws all reasonable inferences from undisputed facts in favor of the nonmoving party and views the disputed evidence in the light most favorable to the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. *See Anderson*, 477 U.S. at 248; *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001). Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute; "instead, the nonmoving party must present definitely, competent evidence in rebuttal." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). "If the nonmoving party fails to make a sufficient showing on an essential element of her case, the moving party is entitled to judgment as a matter of law because 'a complete failure of proof concerning an essential element of the [nonmovant's] case necessarily renders all other facts immaterial.'" *Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 709 (7th Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

## II. BACKGROUND

On the morning of October 26, 2007, Plaintiff Tim Wilkerson dropped his daughter off at Belzer Middle School ("Belzer") in Indianapolis, Indiana. After his daughter vacated the vehicle, Wilkerson cautiously proceeded towards the exit of the parking lot. Directly in Wilkerson's path was a stop sign, which was located near a crosswalk where crossing guard Randy Miles was stationed. Miles was motioning for buses and vehicles to move through the area and exit the parking lot.

According to Wilkerson, Miles jumped in front of his vehicle. Wilkerson called Miles an "ignorant fucking bastard" and Miles struck Wilkerson's vehicle. Wilkerson then stopped his vehicle, reversed, and asked Miles why he had struck the vehicle. At this point, Miles reached into Wilkerson's vehicle, grabbed Wilkerson's arm, and attempted to remove Wilkerson from the vehicle. Eventually, Wilkerson took his foot off of the brake and rolled away from Miles. After leaving Belzer's parking lot, Wilkerson called Mike Fishburn, the head of security for Lawrence Township Schools, to complain about Miles's conduct. Although Wilkerson ultimately elected not to file a formal complaint against Miles, he did meet with Fishburn to discuss the incident.

Miles's version of the altercation is slightly different. Miles claims that he told Wilkerson to stop both verbally and by raising his hand. Wilkerson did not stop and his vehicle ran into Miles's hand. After Miles's hand was struck, and immediately before Wilkerson left the scene, Miles reached into Wilkerson's vehicle and grabbed Wilkerson's jacket. Wilkerson drove away and Miles noticed pain in his hand and arm.

Officer Mark Osborn of the Lawrence Police Department responded to the incident and filled out an initial case report. Defendant Officer J. Bruce Wright was assigned to investigate

the incident and he reviewed Officer Osborn's incident report before beginning his investigation.[1] During his investigation, Officer Wright interviewed Miles on November 2, 2007, witness Teresa Bates on November 5, 2007, and Wilkerson on November 12, 2007. Throughout his investigation, Officer Wright maintained a "running probable cause affidavit" where he summarized each significant event in the investigation.

Bus driver Teresa Bates told Officer Wright that she witnessed the Miles-Wilkerson incident. Bates stated that she heard Wilkerson tell Miles to "move" and to "get out of [his] way." She also said that Miles "spun" and limped after being struck by Wilkerson's vehicle. Bates denied seeing Miles grab Wilkerson's jacket, although she acknowledged that Miles did get close to Wilkerson's vehicle before Wilkerson drove away. Finally, Bates stated that she had recorded the license plate number of the vehicle involved.

Wilkerson's attorney, James Bell, accompanied him to the interview on November 12. In the presence of his attorney, Wilkerson signed an "Advice of Rights" and "Waiver of Rights" document. Officer Wright tape recorded Wilkerson's interview and later had it transcribed. Wilkerson explained his version of events and denied hitting Miles with any part of his vehicle. During the interview, Wilkerson presented Officer Wright with a confidential polygraph report dated November 11, 2007. The polygraph report contained answers to four questions, numbered 3, 5, 8, and 9. The questions and answers were:

> 3. Regarding the altercation do you intend to lie to any question about that?
> Answer: No
> 5. Did you intentionally try to strike Mr. Miles with your car?
> Answer: No

---

[1] Indeed, the beginning of Officer Wright's probable cause affidavit is almost a verbatim recitation of Officer Osborn's initial case report.

      8. Did you strike Mr. Miles with your mirror?
Answer: No
      9. Did you back up, to meet with Mr. Mile [sic] after this incident?
Answer: Yes

Docket No. 54 Ex. 10 at 3.

After completing his investigation, Officer Wright tendered his probable cause affidavit to the Marion County Prosecutor's Office. Officer Wright did not mention or include the polygraph report, the recording of Wilkerson's interview, or the transcript of Wilkerson's interview with his probable cause affidavit. Ultimately, a warrant for Wilkerson's arrest was issued. After learning of the existence of the warrant, Wilkerson surrendered himself to the local jail.

In January 2009, the State of Indiana dismissed the charges against Wilkerson. In October 2009, Wilkerson filed this suit against Officer Wright, Miles, and the Metropolitan School District of Lawrence Township ("Lawrence Township") alleging violation of his Fourth Amendment rights, as well as several state law causes of action. In January 2011, Wilkerson voluntarily dismissed his claims against Miles and Lawrence Township. Thus, all that remains is Wilkerson's Fourth Amendment claim against Officer Wright. Officer Wright has now moved for summary judgment.

### III. DISCUSSION

Officer Wright's primary argument in favor of summary judgment is that Wilkerson's Fourth Amendment claim fails because Wilkerson's prosecution commenced after the issuance of a valid warrant and Wilkerson cannot show that "the probable cause affidavit prepared by Officer Wright contained material misrepresentations and/or omissions – the inclusion of which would have negated the existence of probable cause." Docket No. 54 at 3.

In response, Wilkerson claims that the warrant for his arrest was not valid,[2] and even if it was, Officer Wright is not entitled to summary judgment because "there are significant inconsistencies in Miles's and Bates's accounts of the October 26, 2007 incident" and "no reasonable officer would find their statements reliable and include them in a probable cause affidavit." Docket No. 62 at 25. Moreover, Wilkerson claims that Officer Wright made material misrepresentations and omissions in his probable cause affidavit including: (1) stating that Wilkerson never filed a police report against Miles; (2) stating that Wilkerson accelerated after Miles grabbed his arm; (3) failing to include the results of the polygraph test; and (4) repeating portions of Officer Osborn's incident report without discussing the report with Officer Osborn. *Id*. at 27-29.

In *Olson v. Tyler*, 771 F.2d 277, 280 (7th Cir. 1985), the court explained:

> When a police officer, acting in good faith, obtains a warrant and acts within its scope, he has engaged in no official misconduct; it is the magistrate's responsibility to determine whether the officer's allegations constitute probable cause and it is the magistrate's error if the arrest is later determined to have been unlawful.

*Id*. However, there is an exception to this general rule such that "[a] warrant does not erect an impenetrable barrier to impeachment of a warrant affidavit." *Id*. (citing *Franks v. Delaware*, 438 U.S. 154 (1977)).

> If an officer submitted an affidavit that contained statements that he knew to be false or would have known were false had he not recklessly disregarded the truth and no accurate information sufficient to constitute probable cause attended the

---

[2] Wilkerson spends a great deal of time arguing that the warrant was not valid because there is no evidence that either the prosecutor or the judge who approved the warrant actually reviewed the probable cause affidavit. Wilkerson fails to provide anything more than speculation and innuendo supporting this argument. Moreover, the Court has reviewed the warrant and finds nothing to suggest that it is invalid as Wilkerson alleges.

6

> false statements, not only is his conduct the active cause of the illegal arrest, but
> he cannot be said to have acted in an objectively reasonable manner.

*Id.* Of course, the officer's misstatements or omissions must have been "material in the sense that without [them], no probable cause was established." *United States v. Williams*, 737 F.2d 594, 602 n.5 (7th Cir. 1984); *see also Olson*, 771 F.2d at 281 n.5 (noting that the intentional or reckless omission of *material* facts is actionable).

Wilkerson alleges that "there are significant inconsistencies in Miles's and Bates's accounts of the October 26, 2007 incident" such that "no reasonable officer would find their statements reliable and include them in a probable cause affidavit." Docket No. 62 at 25. According to Wilkerson, five inconsistencies render Miles not credible: (1) in his initial statement to Officer Osborn, Miles reported that children were getting ready to cross at the crosswalk when Wilkerson approached, but in his later statement to Officer Wright "Miles does not mention children getting ready to cross" and he "stated that 'there were no vehicles, pedestrians, or obstructions, between he and the vehicle,'" *id.* at 20; (2) in his initial statement to Officer Osborn, Miles said he stepped in front of Wilkerson's vehicle before signaling for him to stop, however, Miles told Office Wright that he was already standing in Wilkerson's path; (3) Miles never told Officer Osborn that he reached into Wilkerson's vehicle and grabbed Wilkerson's jacket after he was struck, yet Miles confessed this conduct to Officer Wright; (4) Miles did not tell Officer Osborn that Bates had witnessed the incident even though Miles knew that she had seen everything; and (5) Miles did not tell either Officer Osborn or Officer Wright that he chased Wilkerson to 56th Street, but during a subsequent deposition he testified that he did so. *See id.* at 20-21.

Wilkerson also alleges that Bates made statements that conflicted with Miles's account of

the incident. Specifically, he claims: (1) Bates did not mention seeing children at the crosswalk; (2) Bates reported that Miles limped away after being struck, while Miles stated that only his hand and arm were injured; (3) Bates claimed only to see Miles approach Wilkerson's vehicle whereas "Miles stated that he caught up to Wilkerson's SUV, reached in and grabbed Wilkerson's jacket before Wilkerson drove away," *id.* at 21; and (4) Bates never reported seeing Miles grab Wilkerson's jacket.

Contrary to Wilkerson's argument, none of Miles's statements are materially inconsistent. Nor is there anything materially inconsistent between Miles's and Bates's accounts of the incident. In order to be material, the inconsistency must have affected the probable cause finding. Here, the variations are minor, specific, and focused on irrelevant details that do not affect the probable cause finding. Moreover, it was not unreasonable for Officer Wright to credit Miles's and Bates's accounts of the incident. It is well-established that "so long as a reasonably credible witness or victim informs the police that someone has committed, or is committing, a crime, the officers have probable cause to place the alleged culprit under arrest." *Gower v. Vercler*, 377 F.3d 661, 668 (7th Cir. 2004).

Wilkerson next claims that "[t]he testimony that [Miles and Bates] gave in the criminal depositions contain even more inconsistencies; this would further lead a reasonable officer to question their reliability." Docket No. 62 at 22.[3] This is irrelevant because the deposition

---

[3] Wilkerson points to the following inconsistencies: (1) Bates's testimony that Wilkerson struck Miles with the both the bumper and mirror of his vehicle whereas Miles has only alleged that he was struck with Wilkerson's mirror; (2) Bates's testimony that "Wilkerson pulled out in front of her and 'just took off out of the parking lot,'" Docket No. 62 at 22, which allegedly conflicts with Miles's statement that Wilkerson stopped after striking him and Miles reached into the vehicle and grabbed Wilkerson; and (3) Bates's testimony that she followed Wilkerson out of the parking lot and chased him to Franklin Road, which does not fit with Miles's claim that *he*

8

testimony occurred months after Officer Wright submitted his probable cause affidavit.[4]  "'[T]he existence of probable cause turns on the information known to the officers at the moment the arrest is made, not on subsequently-received information.'" *Gower*, 377 F.3d at 668 (quoting *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999)).

Wilkerson also alleges that Officer Wright's probable cause affidavit makes material omissions including: (1) stating that Wilkerson never filed a police report against Miles; (2) stating that Wilkerson accelerated after Miles grabbed his arm; (3) failing to include the results of the polygraph test; and (4) repeating portions of Officer Osborn's incident report without discussing the report with Officer Osborn. Docket No. 62 at 27-29.

As to the police report and the acceleration, neither of these details are material. Including this information in the probable cause affidavit would not, as Wilkerson claims, negate a finding of probable cause.  With respect to the polygraph test results, the questions were narrowly-tailored, specific, and devised by Wilkerson's attorney. In order for their omission to be actionable, the facts "must be material – that is, if the fact[s] were included, the affidavit would not support a finding of probable cause." *Williams*, 737 F.2d at 604.  Here, even if the polygraph results were included, there would still have been probable cause because the polygraph results do not present any material facts to vitiate probable cause.  Second, "[d]eterminations of probable cause are naturally based on probabilities, and a finding of probable cause 'does not require evidence sufficient to support a conviction, nor even evidence

---

chased Wilkerson and upon returning "he walked back to the crosswalk area, at which point Bates told him that she got Wilkerson's license plate number." *Id*. at 23.

[4] Both Miles's and Bates's depositions were taken on March 12, 2008.  The probable cause affidavit was submitted in late 2007.

9

demonstrating that it is more likely than not that the suspect committed a crime.'" *United States v. Funches*, 327 F.3d 582, 586 (7th Cir. 2003) (quoting *United States v. Carrillo*, 269 F.3d 761, 766 (7th Cir. 2001)). A probable cause determination "does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands." *Gerstein v. Pugh*, 420 U.S. 103, 121 (1975). Officer Wright simply did not have to weigh the evidence before filing his probable cause affidavit. Lastly, as noted above, "so long as a reasonably credible witness or victim informs the police that someone has committed . . . a crime, the officers have probable cause to place the alleged culprit under arrest." *Gower*, 377 F.3d at 668. Here, Officer Wright had testimony from both Miles and Bates that negated Wilkerson's story. Their statements were enough to provide probable cause and support the issuance of a warrant.

Finally, Wilkerson claims that "had [Officers Wright and Osborn] discussed the matter, and compared impressions, Wright likely would have come away with a different view of Miles and Bates." Docket No. 62 at 29. Wilkerson speculates that had Officer Wright spoken with Officer Osborn, his opinion of Miles's and Bates's veracity would have changed. However, there is no requirement that Officer Wright speak with Officer Osborn. Officer Wright read Officer Osborn's report, which is all he was required to do. Accordingly, his alleged failure was not material and thus is not actionable.

Having viewed the evidence of record in the light most favorable to Wilkerson, the Court concludes that Wilkerson has not shown that the probable cause affidavit contained material omissions or statements that Officer Wright knew to be false or would have known were false had he not recklessly disregarded the truth. Moreover, there was ample information and

evidence supporting a finding of probable cause in this case. Thus, Officer Wright's conduct did not violate Wilkerson's Fourth Amendment rights.[5]

## **CONCLUSION**

For the foregoing reasons, the Defendant's Motion for Summary Judgment (Docket No. 52) is **GRANTED**.

SO ORDERED: 03/09/2011

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Samuel Mark Adams
Micheal K. Sutherlin and Associates
msutherlin@gmail.com

Brian L England
Hunt Suedhoff Kalamaros LLP
bengland@hsk-law.com

Robert M. Kelso
Kightlinger & Gray
rkelso@k-glaw.com

Samuel Roy Robinson
Church, Church, Hittle & Antrim
srobinson@cchalaw.com

msutherlin@gmail.com

Michael Wroblewski
Kightlinger & Gray
mwroblewski@k-glaw.com

Michael K. Sutherlin
Michael K. Sutherlin & Associates, PC

---

[5] Having resolved the Defendant's motion on these grounds, the Court does not address the Defendant's qualified immunity argument.